In the Matter of the WORKER'S COMPENSATION CLAIM OF John W. THORNBERG, an Employee of Simon Construction.

John W. THORNBERG, Appellant (Petitioner),

v.

STATE of Wyoming ex rel. WYOMING WORKERS' COMPENSATION DIVISION, Appellee (Respondent).

No. 95–121.

Supreme Court of Wyoming.

March 26, 1996.

Opinion Reissued on Denial of Rehearing April 29, 1996.

W.R.A.P. 12.09(b) Certification from the District Court of Laramie County; Honorable Edward L. Grant, Judge.

Daniel E. White of Gusea, Pattno & White, P.C., Cheyenne, for Appellant.

William U. Hill, Attorney General; John W. Renneisen, Deputy Attorney General; Gerald W. Laska, Senior Assistant Attorney General; and Jennifer A. Evans, Assistant Attorney General, for Appellee.

Before THOMAS, MACY, TAYLOR and LEHMAN, JJ., and ARTHUR T. HANSCUM, District Judge.

HANSCUM, District Judge.

Upon certification by the district court of a case in which Appellant John Thornberg filed a petition for judicial review of an administrative decision made by the hearing examiner in a worker's compensation case, we must review the findings, conclusions, and decision denying benefits for a medical condition diagnosed several months after an on-the-job injury.

The hearing examiner's decision is upheld.

## ISSUES

Thornberg presents these issues for our review:

1. Does a review of the entire record show that substantial evidence exists to support the hearing [examiner's] findings of fact?

2. If so, did the hearing [examiner] properly apply the correct law to the facts to find that [Thornberg] failed to sustain his burden to show that a work-related accident which occurred on October 22,

1993 was the cause of the injury for which compensation is sought pursuant to W.S. § 27–14–102 and § 27–14–104?

3. If so, was the hearing [examiner's] conclusion arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law?

The district court's order which certified this case for our review sets forth the issues in slightly different terms as follows:

1. Whether the hearing examiner's December 16, 1994, Order denying [Thornberg's] claim for an award of worker's compensation benefits is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; and[ ]

2. Whether the hearing examiner's December 16, 1994, Order, specifically findings of fact numbers 1, 2, 6, and 16,[1] are supported by substantial evidence.

## FACTS

On October 22, 1993, Thornberg, a big man, drove his fully loaded 40,000–pound dump truck up and over an eighteen- to twenty-four-inch ridge of dirt, slamming the truck's front wheels onto the ground, propelling Thornberg's six-foot two-inch, approximately 260–pound frame downward, and injuring his tailbone.

In the spring of 1994, Thornberg stopped working because he was experiencing rectal

---

1. Findings 1, 2, 6 and 16 read as follows:
 1. On October 22, 1993, Claimant was driving an "end dump" truck number 6196 when he observed a bump in the road between 18 and 24 inches high. He slowed down to about five miles per hour and went over the bump. As the front axle passed over the bump Claimant experienced a jolt and came down hard on his tailbone. The jolt was severe enough that Claimant let out a yip. Claimant felt a sharp pain and his tail[ ]bone hurt. Prior to this date, Claimant had no history of pain in the tail[ ]bone area.
 2. Claimant called into the office to report the bump and talked to Mr. Steve Snyder. The bump was "feathered" down by the time he made his next trip over the bump. At the end of the work day Claimant told anyone who was close that he hurt his tail[ ]bone and might have told Mr. Snyder.
 . . . .

discomfort and abscesses. Subsequently, he was diagnosed as having a condition known as coccydynia. He applied for worker's compensation benefits at that time, giving October 22, 1993, as the date he was injured. Both Thornberg's employer and the Workers' Compensation Division objected to the payment of Thornberg's claim. A contested case hearing was held before the hearing examiner. The hearing focused primarily on the opinion testimony given by five doctors. The hearing examiner denied Thornberg's application for benefits on the basis that Thornberg had failed to prove by a preponderance of the evidence that the coccydynia was causally related to the October 22, 1993, work incident.

Thornberg filed a petition with the district court for judicial review of the hearing examiner's decision. The district court certified the case to this Court pursuant to W.R.A.P. 12.09(b).

## STANDARD OF REVIEW

■ General appellate standards used by a reviewing court of the first instance are applicable to cases certified to us pursuant to W.R.A.P. 12.09(b). *Hepp v. State ex rel. Wyoming Workers' Compensation Division,* 881 P.2d 1076, 1077 (Wyo.1994). Judicial review of an administrative decision is limited to a determination of certain matters specified in WYO.STAT. § 16–3–114(c) (1990), which states in pertinent part:

6. Claimant drew unemployment from November, 1993, until April 19, 1994, when he went back to work. He was unable to work for more than a few days because of severe pain in his rectal area.
 . . . .
16. We have the opinions of five doctors on the issue of whether or not Claimant's coccydynia, which was first diagnosed in May, 1994, is related to the bump in October, 1993. Two doctors (Dr. Donner and Dr. Wilcox) say it is related and three doctors (Dr. Babso[n], Dr. Hummel and Dr. Grizzle) say it is not related. This Office finds that the opinion of Dr. Hummel, the treating physician from October, 1993, to May, 1994, is more persuasive. As such, Claimant has failed to establish by a preponderance of the evidence that the bump in October, 1993, resulted in the medical condition for which he is seeking benefits.

(c) ... [T]he reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

.　　.　　.　　.　　.

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

.　　.　　.　　.　　.

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

■ In reviewing an administrative decision, we are required to examine the administrative agency's findings of fact under the "substantial evidence" standard:

"Our task is to examine the entire record to determine if substantial evidence exists to support the hearing examiner's findings. We will not substitute our judgment for that of the hearing examiner if his decision is supported by substantial evidence. Substantial evidence is *relevant* evidence which a reasonable mind might accept in support of the agency's conclusions."

*Bearden v. State ex rel. Wyoming Workers' Compensation Division*, 868 P.2d 268, 269 (Wyo.1994) (emphasis added) (quoting *Romero v. Davy McKee Corporation*, 854 P.2d 59, 61 (Wyo.1993)). In *Jaqua v. State ex rel. Wyoming Workers' Compensation Division*, 873 P.2d 1219 (Wyo.1994), we imposed on the appellant the burden of proving the negative. We held that a "party who appeals from an administrative determination has the burden of proving the *lack of* substantial evidence to sustain the ruling of the agency." 873 P.2d at 1221 (emphasis added).

## DISCUSSION

### A. Statutory Burdens of Proof

Thornberg asserts that his evidence was sufficient and that the medical testimony supported a finding of a nexus between the bumpy ride and his later diagnosed condition. To evaluate this argument, we will inventory the burdens of proof in worker's compensation cases.

■ —A claimant in a worker's compensation case has the burden of proving all the statutory elements which comprise a "compensable injury." *Gifford v. Cook–McCann Concrete, Inc.*, 526 P.2d 1197, 1199 (Wyo. 1974); *Black Watch Farms v. Baldwin*, 474 P.2d 297, 298 (Wyo.1970); *Associated Seed Growers, Inc. v. Scrogham*, 52 Wyo. 232, 252, 73 P.2d 300, 307 (1937).

■ —To show "compensable injury," the claimant must prove all the essential elements of the claim by a "preponderance of the evidence." *Hepp*, 881 P.2d at 1078; *Sims v. State ex rel. Wyoming Workers' Compensation Division*, 872 P.2d 555, 557 (Wyo.1994); *Alco of Wyoming v. Baker*, 651 P.2d 266, 267 (Wyo.1982).

■ —A "preponderance of the evidence" is defined as "proof which leads the trier of fact to find that the existence of the contested fact is more probable than its non-existence." *Scherling v. Kilgore*, 599 P.2d 1352, 1359 (Wyo.1979).

■ The only ostensible element missing in Thornberg's claim was the element of causation embedded in the definition of "injury":

(xi) "Injury" means ***any harmful change in the human organism*** other than normal aging and includes damage to or loss of any artificial replacement and death, ***arising out of and in the course of*** employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business.

Wyo.Stat. § 27–14–102(a)(xi) (Supp.1995) (emphasis added). Thornberg's statutory

burden to prove injury necessarily carries the evidentiary burden to prove that his coccydynia arose out of or was **caused by** the bumpy ride. Five doctors testified as expert witnesses and gave their opinions in support of or in opposition to Thornberg's contention that his condition was causally related to his injury. All the doctors were competent witnesses, and each was qualified to give expert testimony. Competency and expert witness status having been established, the hearing examiner was left to apply the evidentiary standards which pertain to administrative hearings.

**B. Evidentiary Standard**

The Wyoming Administrative Procedure Act, WYO.STAT. § 16–3–101 to –115 (1990 & Supp.1995), sets the broad standard for admissibility of evidence at an administrative hearing: The evidence must be of the type that is "commonly relied upon by reasonably prudent men in the conduct of their serious affairs." Section 16–3–108(a). Thornberg's evidence must pass this broad test of relevancy, and each witness's testimony must be probative on the issue of causation.

The coccydynia was diagnosed several months after the incident; however, Thornberg's claim was submitted and adjudicated as a single occurrence case which arose out of that incident. Generally, when a single incident is alleged to have caused an injury, medical testimony is not required if it is not essential to establish a causal connection between the occurrence and the injury. *Forni v. Pathfinder Mines,* 834 P.2d 688, 693 (Wyo.1992); *Hansen v. Mr. D's Food Center,* 827 P.2d 371, 373 (Wyo.1992). However, under certain circumstances, medical testimony may be essential to establish a causal connection. *Black Watch Farms,* 474 P.2d at 300. As a practical matter, medical testimony was indispensable to Thornberg's case since the medical condition complained of in the spring of 1994 was not " 'immediately and directly or naturally and probably' " the result of the October 1993 incident. *Hansen,* 827 P.2d at 373 (quoting *Colorado Fuel & Iron Corporation v. Frihauf,* 58 Wyo. 479, 135 P.2d 427, 434 (1943)). It is only " '[w]here injuries are so immediately and directly or naturally and probably the result of an accident, [that]

medical evidence is not essential to find a causal connection.' " *Id.*

The hearing examiner had the responsibility of determining relevancy, assigning probative value, and ascribing weight to be given to the doctors' testimony. The term relevancy as it is used to determine the existence of "relevant evidence" has the same definition as that which is found in the Wyoming Rules of Evidence. *See Department of Employment, Labor Standards Division v. Roberts Construction Company,* 841 P.2d 854, 857 (Wyo.1992); W.R.E. 402, 403. At a minimum, the administrative hearing examiner must consider only "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." W.R.E. 401.

Thornberg's medical evidence was admitted without objection at the administrative hearing. Implicitly, the testimony was relevant and had probative value. Thornberg's apparent deficiencies lie in the comparative **weight** the hearing examiner gave the medical testimony in this case.

**C. Medical Testimony**

1. JONATHAN HUMMEL, M.D., SURGEON, VETERANS ADMINISTRATION MEDICAL CENTER, CHEYENNE. Dr. Hummel treated Thornberg originally for an unrelated problem and happened across the symptomatology which gave rise to the coccydynia diagnosis. When he was asked whether in his opinion the tailbone incident caused the symptoms which led up to the coccydynia, Dr. Hummel stated:

> Well, it's—it is **certainly** a **possibility**. I can't really make any, you know, authoritative statement on the **probability** of it, but it would certainly **be possible**.

Later, in the following colloquy, he offered these opinions:

> Q. Isn't it true of, Dr. Hummel, that jolts or shocks to the tailbone area sometimes produce rectal abscesses and anal fistulas?
>
> A. Can happen.
>
> Q. I mean is that a **fairly** common phenomenon?

A. It's **not unusual.** It wouldn't make Ripley's, you know. It's not—it's not the invariable way to get a fissure in ano or a perirectal abscess, but it **could occur.**

On cross-examination, he said:

Q. And, Doctor, if I understood your testimony correctly it would be **speculative** to conclude that Mr. Thornberg's coccydynia in May of '94 was due to going over a bump in October of '93?

A. Yes, I think that's **probably** a good word for it. It's **speculative.** It's not **impossible,** but I don't know how you'd ever prove it.

2. JOHN H. BABSON, M.D., GENERAL PRACTITIONER, CHEYENNE. Dr. Babson performed a physical examination of Thornberg shortly after the coccydynia diagnosis. After having been informed of Thornberg's patient history, including the tailbone injury, Dr. Babson rendered his opinion:

However as of now I cannot identify any abnormalities which **may relate** to an injury.

3. CLAUDE O. GRIZZLE, M.D., NEUROSURGEON, CHEYENNE. Dr. Grizzle, reviewing the case for the Workers' Compensation Division, was asked whether the coccydynia which Thornberg was experiencing was caused by the October 22, 1993, incident. He testified:.

A. Well, I have an opinion, and that's based on **probabilities.**

Q. Okay. Well, what is your opinion?

A. My opinion is that it is **unlikely.**

He further testified:

My opinion is that his coccy[ ]dynia, which was mentioned for the first time approximately May 4th, 1994, was **remote** from the event that happened that's described when he drove over the bump.

4. EDWARD JEFFREY DONNER, M.D., ORTHOPEDIC SURGEON, LOVELAND, COLORADO. Dr. Donner evaluated Thornberg and performed a physical examination. He assessed the history of Thornberg's medical condition in these words:

Well, in his case it **sounds as though** he was injured, he was treated for all the rectal problems, and as they recovered, his coccyx, for whatever reason, becomes more painful and, you know, just doesn't heal, just as **can happen** if you injure your shoulder or any other joint, a lot of people go on to heal and there's enough of them who won't, that continue to have symptoms, that you have to treat more aggressively.

He gave his opinion on the causation in the following dialogue:

Q. Do you have an opinion then based on **reasonable medical probability** that this—the bump that Mr. Thornberg took in his truck, as described to you, is the—is the **cause** of the coccy[ ]dynia or pain in his coccyx that you evaluated and treated him for?

A. Yes.

Q. And what is that opinion?

A. That it's my opinion that [was] the **most likely** source and cause of his pain.

5. MILO E. WILCOX, DOCTOR OF CHIROPRACTIC, CHEYENNE. Dr. Wilcox provided chiropractic adjustment and other services to Thornberg. He gave the following opinion with regard to the displacement of Thornberg's coccyx and the cause of his coccydynia:

Mr. Thornberg said he was driving a dump truck of some kind, or a truck of some kind, and he—he ˙bounced over a heavy bump, and he had a strong compressive force that, you know, between his buttocks and his rear end in the seat. And so when he came smashing down like that, my opinion that's what not only irritated the coccyx but also the sacrum and the lower lumbar area which I found in exam to **also be involved.**

### D. Weight of the Evidence

As can be readily seen from the emphasis supplied to the doctors' excerpted testimony, the doctors' opinions were conflicting. The fact finder was left with weighing these opinions, and to do so he had to consider (1) the opinion, (2) the reasons, if any, given for it, (3) the strength of it, and (4) the qualifications and credibility of the witness expressing it. *Krause v. State ex rel. Wyoming Workers' Compensation Division,*

803 P.2d 81, 83 (Wyo.1990); *Rice v. State,* 500 P.2d 675, 676 (Wyo.1972).

 Dr. Donner, a medical doctor, offered an opinion favorable to Thornberg that the bumpy ride was the most likely source of the coccydynia. Dr. Wilcox, a doctor of chiropractic, opined that the bumpy ride caused the coccydynia. Dr. Grizzle and Dr. Babson, two medical doctors, offered their opinions that the coccydynia could not relate to the October 1993 incident. Finally, Dr. Hummel, a medical doctor and Thornberg's treating physician, hedged his opinion by saying that causation was "certainly a possibility" but that he would not make an "authoritative statement," observing that "[i]t wouldn't make Ripley's, you know." This equivocation may have dealt a serious blow to Thornberg, who held the burden of proof on the issue. All tolled, our review of the record convinces us that there was a "rational view" for the hearing examiner's findings 1, 2, 6, and 16. *Wyoming Department of Employment, Division of Unemployment Insurance v. Rissler*

& *McMurry Company,* 837 P.2d 686, 689 (Wyo.1992).

 Even if it were a close question, we would rely upon the decision of the hearing examiner because "[o]ur deference for findings of fact is reserved for the fact-finder." *Employment Security Commission of Wyoming v. Western Gas Processors, Ltd.,* 786 P.2d 866, 870 (Wyo.1990). The hearing examiner articulated in his findings[2] the weight he assigned to the medical testimony under applicable legal standards. We have said that the fact finder is in the best position to judge both credibility and "weight to be given the medical evidence." *Padilla v. Lovern's, Inc.,* 883 P.2d 351, 355 (Wyo.1994).

 The medical testimony, when viewed in the aggregate, is equivocal on the question of whether Thornberg's claimed injury was work related. The hearing examiner, having determined the admissibility of the doctors'

---

2. Findings 7, 11, 14, 15, and 16 read as follows:
 7. On May 2, 1994, Dr. Hummel, the physician at the V.A., diagnosed Claimant as having coccydynia.... Dr. Hummel testified that it was possible that the rectal pain masked the coccyx pain but that if coccydynia was the major problem between October, 1993, and May, 1994, it would have been noted in the records and it was not. Dr. Hummel said it was speculative to say that the bump caused the coccyx pain. He went on to state that he could not say that the bump did cause the coccyx problems because he could not tie the bump to the pain. On the other hand he could not say that the two were not related.
 ....
 11. Claimant was examined by Dr. Donner on August 11, 1994, for chronic pain in the lower back and coccyx area. After taking a history from Claimant which included a description of the bump in October, 1993, he confirmed that Claimant had coccydynia. Dr. Donner stated that with a reasonable degree of medical probability ... the bump in October, 1993, was the most likely source and cause of Claimant's pain.... Dr. Donner also stated that if Claimant did not have a history of pain prior to October, 1993, and did have pain after that date then this was more evidence that the injury caused the tail[ ]bone pain....
 ....
 14. A medical review of Claimant's records was performed by Dr. Grizzle. After examining the records of the V.A., Dr. Babso[n], Dr. Donner, Dr. Wilcox, and the various x-rays, Dr. Grizzle stated that to a reasonable degree

of medical certainty it is unlikely that Claimant's coccydynia was directly related to the bump in October, 1993.... It was his feeling that if Claimant actually had coccydynia in October, 1993, it would have been noted in the V.A. records before the diagnosis in May, 1994.
 15. The burden is on the Claimant to establish by a preponderance of the evidence that he suffered an injury as defined in W.S. 27–14–102(a)(xi). An injury is defined as "any harmful change in the human organism other than normal aging ... arising out of and in the course of employment...." In this case, Claimant must also establish by a preponderance of the evidence that the cause of his condition arose out of the work effort with the employer. Where the condition involves complex medical issues, the knowledge and testimony of medical experts is highly persuasive and relevant.
 16. We have the opinions of five doctors on the issue of whether or not Claimant's coccydynia, which was first diagnosed in May, 1994, is related to the bump in October, 1993. Two doctors (Dr. Donner and Dr. Wilcox) say it is related and three doctors (Dr. Babso[n], Dr. Hummel and Dr. Grizzle) say it is not related. This Office finds that the opinion of Dr. Hummel, the treating physician from October, 1993, to May, 1994, is more persuasive. As such, Claimant has failed to establish by a preponderance of the evidence that the bump in October, 1993, resulted in the medical condition for which he is seeking benefits.
 (Citations omitted).

medical testimony, assigned a probative value and then weighed it, a process contemplated by and in accordance with administrative law. We will do no more than our assigned duty on review:

> The testimony in this record may be subject to varying interpretations, but we will not usurp the function of the [trier of fact] in making factual findings with respect to this case. It is the duty of the trier of fact to weigh and evaluate the testimony of the witnesses, including that given by experts.... [The trier of fact] "was the sole judge of the credibility of the witnesses and was entitled to interpret the evidence." *Ward v. Yoder*, Wyo., 355 P.2d 371, 374 (1960).

*Creek v. Town of Hulett*, 657 P.2d 353, 357 (Wyo.1983), *quoted in Hepp*, 881 P.2d at 1079. *See also Atchison v. Career Service Council of State of Wyoming*, 664 P.2d 18 (Wyo.), *cert. denied*, 464 U.S. 982, 104 S.Ct. 424, 78 L.Ed.2d 359 (1983). Furthermore, "[w]hen the inconsistencies in the evidence and the claimant's testimony make it impossible for the hearing examiner to determine whether the accident arose out of [and] in the course of his employment, the claimant has failed to sustain his burden." *Latimer v. Rissler & McMurry Co.*, 902 P.2d 706, 711 (Wyo.1995).

## CONCLUSION

Thornberg has failed to carry his appellate burden of proof to show the lack of substantial evidence to support the hearing examiner's decision. The hearing examiner, having employed the proper burdens of proof and evidentiary standards, decided to deny benefits because Thornberg failed to carry the burden of proof. We are not in a position to hold otherwise. The hearing examiner's decision is, therefore, upheld.